THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:
October 23, 2013

Mailed:
April 17, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Bayer Consumer Care AG*
*v.*
*Belmora LLC*

_____

Cancellation No. 92047741

_____

Bradley L. Cohn, Phillip Barengolts, Alexis E. Payne, Ian J. Block, Scott T. Lonardo, Seth I. Appel, and Jeffrey A. Wakolbinger, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP, for Bayer Consumer Care AG.

Marsha G. Gentner, Philip L. O'Neill, and Leesa N. Weiss, Jacobson Holman PLLC, for Belmora LLC.

_____

Before Seeherman, Taylor, and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

Bayer Consumer Care AG petitions to cancel Belmora LLC's registration for the mark FLANAX, in standard characters, for "orally ingestible tablets of Naproxen Sodium for use as an analgesic" in International Class 5.[1]  Petitioner alleges that the registered mark is being used by the respondent to misrepresent

_____

[1] Registration No. 2924440, issued February 1, 2005.  A declaration of use pursuant to Section 8 of the Trademark Act, 15 U.S.C. § 1058, was accepted December 16, 2010.

the source of the goods on or in connection with which the mark is used pursuant to Section 14(3) of the Trademark Act, 15 U.S.C. § 1064(3).

We grant the petition to cancel.

Summary of Proceeding

Petitioner filed a petition to cancel on June 29, 2007,[2] asserting a likelihood of confusion. After respondent moved to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), asserting that petitioner had not properly alleged standing or prior use in the United States, petitioner amended its pleading to allege that its mark FLANAX had been used in the United States,[3] and respondent's motion to dismiss was denied as moot.[4] In addition to a Section 2(d) claim, the amended petition also asserted as grounds for cancellation that the registration violated (1) Article 8 of the General Inter-American Convention for Trademark and Commercial Protection of Washington, 1929 ("Pan American Convention"), and (2) Article V of the Convention for the Protection of Commercial, Industrial and Agricultural Trademarks and Commercial Names of Santiago, 1923 ("Santiago Convention"). In lieu of a responsive pleading, respondent moved to dismiss the amended petition, again alleging that petitioner failed to state a claim and lacked

---

[2] This proceeding thus was not subject to the modified disclosure and conferencing regime applicable to inter partes proceedings commenced after November 1, 2007. *See* Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 401 (3d ed. rev. 2 June 2013).

[3] As discussed *infra*, petitioner has not used the FLANAX mark in the United States.

[4] Board Order of September 26, 2007, 10 TTABVUE. Citations to the record include the TTABVUE number of the public (and English-language) entry where available, and, where relevant, to the electronic page number where a cited document or testimony appears.

standing. The Board granted respondent's motion to dismiss but allowed petitioner time to replead.[5] Petitioner filed a second amended pleading.

For a third time, respondent moved to dismiss the amended petition for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). The Board granted the motion in part in the precedential decision *Bayer Consumer Care AG v. Belmora LLC*, 90 USPQ2d 1587 (TTAB 2009).[6] The four claims in the second amended petition, and their disposition, were as follows:

1. Likelihood of confusion under Section 2(d): Dismissed with prejudice for failure to allege that goods bearing petitioner's FLANAX mark were manufactured or distributed in the United States prior to respondent's filing date by petitioner or on its behalf. *Id.* at 1591.

2. Violation of Article 6*bis* of the Paris Convention for the Protection of Industrial Property ("Paris Convention"), as made applicable by Sections 44(b) and (h) of the Trademark Act: Dismissed with prejudice. The Board stated that Article 6*bis* does not afford an independent cause of action for parties in Board proceedings, and that Trademark Act Section 44 does not "provide the user of an assertedly famous foreign trademark with an independent basis for cancellation in a Board proceeding, absent use of the mark in the United States." *Id.*[7]

---

[5] Board Order of July 29, 2008, 17 TTABVUE.

[6] Board Order of April 6, 2009, 25 TTABVUE.

[7] *Cf. Fiat Group Automobiles S.p.A. v. ISM Inc.*, 94 USPQ2d 1111, 1115 (TTAB 2010) ("We must, however, at least recognize the possibility that, in an unusual case, activity outside

3. Misrepresentation of source under Section 14(3) of the Trademark Act:

Motion to dismiss denied. The Board found that petitioner had "alleged clearly and specifically that respondent copied petitioner's mark, including its particular display, and virtually all elements of its packaging, in order to 'misrepresent to consumers, including especially consumers familiar with Petitioner's FLANAX mark,' that respondent's product is from the same source as petitioner's product."

*Id.* at 1592. The claim was therefore sufficiently pled. Furthermore:

> While respondent argues that petitioner does not have "standing" to bring a misrepresentation of source claim given its failure to allege use in the United States, petitioner has alleged that it is damaged by respondent's use of strikingly similar packaging "to misrepresent the source of" respondent's goods. This is enough to sufficiently allege petitioner's standing in this proceeding. Although existing case law does not address whether petitioner's alleged use is sufficient to support a claim of misrepresentation of source, we find that at a minimum the claim is pled sufficiently to allow petitioner to argue for the extension of existing law. Moreover, respondent's focus solely on petitioner's extra-territorial use fails to take account of the fact that respondent's use is in the United States and to the extent such use may be misrepresenting to consumers making purchases in the United States that petitioner is the source of respondent's products, the misrepresentation is alleged by petitioner to be occurring in the United States. The Lanham Act provides for the protection of consumers as well as the property rights of mark owners.

> *Id.*

---

the United States related to a mark could potentially result in the mark becoming well-known within the United States, even without any form of activity in the United States.").

4. <u>Fraud:</u> Dismissed with prejudice. Because petitioner did not sufficiently allege prior use of its mark in the United States, it also did not sufficiently allege that it had legal rights superior to respondent's; therefore, petitioner's claim that respondent falsely declared that no other person, firm, corporation, or association had the right to use the FLANAX mark in commerce was untenable. *Id.* at 1592-93.

Thus, after the Board's order of April 6, 2009, petitioner's only remaining claim was misrepresentation of source pursuant to Trademark Act Section 14(3).

Respondent filed an answer denying petitioner's allegations and asserting several affirmative defenses on June 5, 2009, then moved for summary judgment three months later, asserting that petitioner lacked standing and that respondent had not misrepresented the source of its products as a matter of law. The Board denied respondent's motion for summary judgment on petitioner's standing and granted petitioner's cross-motion for discovery pursuant to FED. R. CIV. P. 56(f), deferring consideration of respondent's motion for summary judgment on the merits.[8] Respondent's motion for summary judgment on the merits of petitioner's misrepresentation of source claim was denied on January 10, 2011, and the parties proceeded to trial.[9]

---

[8] Board Order of February 2, 2010, 43 TTABVUE. The rule governing discovery in response to a summary judgment motion is now found at FED. R. CIV. P. 56(d).

[9] Board Order of January 10, 2011, 60 TTABVUE. Discussion of various other discovery and trial motions not before us on final decision is omitted. Also, because respondent did not brief its affirmative defenses as such at trial, they are deemed waived. *See, e.g.*, *Miller v. Miller*, 105 USPQ2d 1615, 1616 n.3 (TTAB 2013). However, to the extent they serve to amplify respondent's defense – including its assertion that petitioner lacks standing – they have been considered.

The case is fully briefed, and an oral hearing was held on October 23, 2013.

Evidence and Objections

Each party has moved to strike evidence proffered by the other party. Because of the volume of objections, we address only the objections to the evidence on which the parties relied and that may be relevant to the claim before us. We also discuss only in general terms the portions of the record that the parties have submitted under seal and have not disclosed in their public briefs.

A.    Respondent's Motion to Strike Exhibits to Petitioner's Notice of Reliance[10]

Respondent moves to strike Exhibit B, Parts I and II, to petitioner's notice of reliance, i.e., excerpts from the *Dictionary of Pharmaceutical Specialties of Mexico* and advertisements for Petitioner's FLANAX products from printed publications circulated in Mexico on the basis that they were not shown to be in general circulation in the United States, and also that the advertisements were insufficiently identified and may be made of record only through witness testimony.[11] Respondent's motion is denied. The documents are admissible by notice of reliance pursuant to Trademark Rule 2.122(e), 37 C.F.R. § 2.122(e), for petitioner's stated purpose of showing the FLANAX mark and packaging in Mexico. In addition, the sources of the materials in Exhibit B, Part II are sufficiently identified.

---

[10] 90 and 97 TTABVUE; Corrected Appendix 1 to Respondent's Brief, Exhibits A and B, 128 TTABVUE 7-21.

[11] 80 TTABVUE 216-37 and 238-46.

B.    Petitioner's Objections and Motion to Strike Respondent's Evidence[12]

    1.    Counter-Designations from Belcastro Deposition (Exhibit C to Respondent's Amended Notice of Reliance)[13]

Petitioner objects to respondent's proffered counter-designated excerpts from the discovery deposition of respondent's owner, Jamie Belcastro, on the ground that respondent has failed to sufficiently explain why it needs to rely on each additional excerpt. Respondent does not address its 26 non-consecutive pages of counter-designations individually, but states that they "are offered pursuant to Fed. R. Civ. P. 32(a)(6), which allows an adverse party to offer other parts of a deposition that in fairness should be considered with the parts already introduced," to provide context to the "snippets" of testimony designated by petitioner.[14]

Petitioner's objection is governed by Trademark Rule 2.120(j)(4):[15]

> If only part of a discovery deposition is submitted and made part of the record by a party, an adverse party may introduce under a notice of reliance any other part of the deposition which should in fairness be considered so as to make not misleading what was offered by the submitting party. *A notice of reliance filed by an adverse party must be supported by a written statement explaining why the adverse party needs to rely upon each additional part listed in the adverse party's notice, failing which the Board, in its discretion, may refuse to consider the additional parts.* (emphasis added).

---

[12] 115, 117, and 122 TTABVUE; Appendix to Petitioner's Brief, 125 TTABVUE; Appendix to Petitioner's Reply Brief, 132 TTABVUE.

[13] 112 TTABVUE 87-124. Respondent also filed an amended notice of reliance, without exhibits, on December 10, 2012. *See* 116 TTABVUE.

[14] Respondent's notice of reliance, 116 TTABVUE 4-6.

[15] Inter partes proceedings before the Board are governed, in part, by the Federal Rules of Civil Procedure, except as otherwise provided in the Trademark Rules of Practice. Trademark Rule 2.116(a).

We agree with petitioner that respondent's blanket statements fail to explain why respondent needs to rely on each additional proffered excerpt. Nonetheless, in our discretion, we have reviewed the excerpts and find that each introduces new testimony rather than makes the testimony designated by petitioner not misleading. We therefore grant petitioner's motion to strike Exhibit C to respondent's notice of reliance.

2. Counter-Designations from Belcastro Declaration (Exhibit D to Respondent's Corrected Amended Notice of Reliance)[16]

Petitioner attempted to submit by notice of reliance portions of a declaration by respondent's owner in support of respondent's motion for summary judgment, arguing that these statements from Mr. Belcastro's declaration are admissible as statements by a party-opponent pursuant to FED. R. EVID. 801(d)(2). Declarations are not among the types of evidence admissible by notice of reliance. Trademark Rule 2.122(e). Respondent, however, did not object on this basis, but rather submitted the entire declaration with all exhibits as an exhibit to its own notice of reliance. Respondent argues that petitioner effectively consented to submission of the full declaration into evidence; failing that, respondent argues that the declaration is admissible in the interests of justice under the "residual" hearsay exception embodied in FED. R. EVID. 807(a).

Because both parties submitted (in whole or in part) Mr. Belcastro's declaration, we deem them to have stipulated the declaration into the record, and

---

[16] 111 TTABVUE 9-67 (redacted).

we hereby consider the entire declaration for whatever evidentiary value it may have and deny petitioner's motion to strike respondent's Exhibit D.

3. Testimony of Expert Witness Benjamin L. England[17]

Petitioner objects to the testimony deposition of Benjamin L. England, offered by respondent as an expert witness, because Mr. England was not timely disclosed and did not submit a written report. Although this case predates the Board's pretrial and expert witness disclosure requirements, petitioner's Interrogatory No. 20 sought disclosure of any expert on whose opinion respondent intended to rely pursuant to FED. R. CIV. P. 26(a)(2)(A) and (B). Respondent responded during discovery that it "has not yet identified any expert witness that it expects to call to testify on its behalf."[18]

General discovery closed February 9, 2011. Respondent states that it "determined to elicit Mr. England's testimony only after reviewing the record following the close of Petitioner's testimony period" in response to petitioner's decision not to introduce a paragraph of the Belcastro Declaration.[19] However, petitioner's testimony period closed on October 14, 2012, and respondent did not identify Mr. England as a potential witness until November 28, 2012,

---

[17] 119-21 TTABVUE.

[18] Annex 1 to Petitioner's Brief, 124 TTABVUE 55 (redacted). It appears that respondent identified Mr. England in a supplemental answer to Interrogatory No. 20 in the text of an email to petitioner on December 3, 2012, during respondent's testimony period. Appendix 1 to Respondent's Brief, 127 TTABVUE 51.

[19] Appendix 1 to Respondent's Brief, respondent's opposition to petitioner's objections to its evidence, at 1-2, 127 TTABVUE 3-4.

approximately halfway through its testimony period.[20]  Moreover, petitioner's notice of reliance introducing portions of the Belcastro Declaration was filed more than a year before respondent identified Mr. England, on August 24, 2011.  We also point out that, although respondent states that it identified Mr. England "shortly after he was engaged," Mr. England testified that he was contacted during the first or second week of November 2012 and agreed to testify shortly thereafter, well before he was identified on November 28.[21]

We find that respondent's failure to promptly identify and disclose its expert witness and provide a written report was neither substantially justified nor harmless, and petitioner's objection is sustained.  We therefore strike the England testimony due to untimely disclosure pursuant to FED. R. CIV. P. 37(c)(1).  *See also* Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 414(7) (2d ed. rev. 2004)[22] ("A party need not, in advance of trial, specify in detail the evidence it intends to present, or identify the witnesses it intends to call, except that the names of expert witnesses intended to be called are discoverable."); TBMP § 414(7) & n.13 (3d ed. rev. 2 June 2013) ("For proceedings commenced prior to November 1, 2007, a party need not, in advance of trial, identify the witnesses it intends to call, except that the names of expert witnesses intended to be called are discoverable.").  We point out, however, that the entire Belcastro Declaration has been admitted into evidence, obviating respondent's rationale for the England testimony.

---

[20]  *Id.* at 4.

[21] England Transcript at 33:22-34:25, 119 TTABVUE 36-37.

[22] This was the operative edition of the TBMP at the time this proceeding commenced.

10

4. Cross-Examination Testimony of Pascal Bürgin[23]

We sustain petitioner's objections to cross-examination questions six through 57 and Exhibits A through E from the deposition on written questions of petitioner's witness Pascal Bürgin, on the ground that the cross-examination exceeded the scope of the direct examination pursuant to FED. R. EVID. 611(b).

5. Exhibits G and H to Respondent's Amended Notice of Reliance[24]

Finally, for the sake of completeness, we note that previous orders of the Board in the same proceeding (including respondent's Exhibit G) are automatically of record. Also, because the document in Exhibit H – displaying respondent's annotations to the operative pleading – is not admissible by notice of reliance, we grant petitioner's motion to strike it.

We hasten to add that consideration of any of the excluded evidence would not have affected the outcome.

C.    Description of the Record

The file of the subject registration for FLANAX is automatically of record. Trademark Rule 2.122(b). Pursuant to the evidentiary rulings *supra*, a summary of the evidence made of record by the parties follows.

1. Petitioner's Evidence

Petitioner introduced testimony depositions, with exhibits, of the following six individuals:

---

[23] 109 TTABVUE 9-24 (testimony) and 133-84 (exhibits) (redacted).

[24] 112 TTABVUE 159-77.

- Karla Fernandez Parker, president and CEO of K. Fernandez & Associates, a Hispanic and multicultural marketing and advertising agency in San Antonio, Texas that did work for respondent in 2007;[25]

- Eduardo Gonzalez Machado, a former contractor for K. Fernandez & Associates who performed work for respondent;[26]

- Paul Currao, an account executive of packaging firm Disc Graphics, which produces cartons and labels for respondent;[27]

- Lisa Halprin Fleisher, former global brand director for petitioner's naproxen sodium brands, including FLANAX and ALEVE;[28]

- Pascal Bürgin, head of law and compliance for petitioner, who was deposed on written questions;[29] and

- Juan Jose Bandera, marketing director for Bayer de Mexico, S.A. de C.V.[30]

Petitioner submitted the following evidence by notice of reliance:

- Publications showing the FLANAX mark and packaging in Mexico;[31]

- Printouts from the website of the Department of Homeland Security showing data on numbers of Mexican immigrants to the United States;[32]

- Printouts from websites accessible in the United States, including YouTube.com and Google.com, showing petitioner's FLANAX mark;[33]

---

[25] 78 TTABVUE.

[26] 94 TTABVUE.

[27] 99 TTABVUE (Exhibit 29 filed under seal at 100 TTABVUE 54).

[28] 91 TTABVUE.

[29] 106 and 109 TTABVUE. Mr. Bürgin's business address is in Basel, Switzerland.

[30] 92 TTABVUE (filed under seal).

[31] Petitioner's Exhibit B, 80 TTABVUE 216-46.

[32] Exhibit C, 80 TTABVUE 247-75.

[33] Petitioner's Exhibit D, 80 TTABVUE 276 to 81 TTABVUE 69.

- Excerpts from pharmacology reference books;[34]

- Printouts from the Aleve.com website and electronic records of the ALEVE trademark registration from the U.S. Patent and Trademark Office database;[35]

- A copy of petitioner's second set of requests for admission and respondent's responses, admitting the authenticity of certain documents produced by respondent in response to petitioner's discovery requests and identified as Exhibits 1 through 420;[36]

- Printouts from the electronic records of the U.S. Patent and Trademark Office showing:

  o the current status and title of respondent's Registration No. 3094431 (DAYAMINERAL);[37]

  o the current status and title of respondent's Registration No. 2712285 (GOYA), and electronic records from the Trademark Trial and Appeal Board concerning Goya Foods, Inc.'s petition to cancel that registration;[38] and

  o the current status and title of respondent's Registration No. 3243061 (ANA-DENT TODO DOLOR);[39]

- A Spanish-language printout from GrupoTeramed.com relating to the analgesic ANA-DENT;[40]

---

[34] Exhibit E, 81 TTABVUE 70-151.

[35] Petitioner's Exhibit F, 81 TTABVUE 152-65.

[36] Exhibit G, 84 TTABVUE 127 through 88 TTABVUE 102 (redacted). It should be noted that, although documents produced in response to document production requests generally cannot be made of record by notice of reliance, *see* Trademark Rule 2.120(j)(3)(ii), serving requests for admission as to the authenticity of the documents on the producing party, and then submitting those admissions by notice of reliance, is a proper way to make the documents of record. *See* TBMP § 704.11(1). We further note that the parties stipulated that these exhibits could be made of record during each party's testimony period by notice of reliance. Although petitioner could make the documents of record pursuant to Trademark Rule 2.120(j)(3)(i) without such a stipulation because they were respondent's responses to petitioner's requests for admission, the stipulation also allowed respondent to submit the responses/documents, even if petitioner had elected not to submit them.

[37] Exhibit H(1), 82 TTABVUE 14-46.

[38] Exhibit H(3), 82 TTABVUE 55-99.

[39] Exhibit H(4), 82 TTABVUE 100-43.

- Certain of respondent's responses to petitioner's interrogatories, requests for admission, and requests for production (the latter indicating that no documents responsive to those requests exist);[41]

- Documents showing respondent's FLANAX mark on its goods, including printouts from respondent's current and former websites (FlanaxUSA.com and ElMedicoFlanax.com, respectively) and Facebook page[42] and third-party websites showing respondent's FLANAX products offered for sale;[43]

- Excerpts from the discovery deposition of respondent's owner Jamie Belcastro, with exhibits and errata sheet;[44] and

- Excerpts from a declaration of Mr. Belcastro submitted with respondent's reply in support of its motion for summary judgment on August 10, 2010.[45]

Petitioner also filed a supplemental notice of reliance containing (1) a certified copy of the file for Bayer's Mexican Trademark Registration No. 224,435 for FLANAX, admissible as an official record under Trademark Rule 2.122(e),[46] and (2) printouts from the website of Abbott Laboratories translated from Spanish to English identifying DAYAMINERAL as one of its products offered for sale outside the United States in the Dominican Republic and the Caribbean.[47]

---

[40] Exhibit H(5), 82 TTABVUE 144-45.

[41] Exhibit "I," 88 TTABVUE 235 to 89 TTABVUE 12 (filed under seal).

[42] Exhibit J, 82 TTABVUE 201-39.

[43] Exhibit K, 82 TTABVUE 240-53.

[44] Exhibit L, 89 TTABVUE 76-173 (filed under seal; certain exhibits also at 82 TTABVUE 254-74).

[45] Exhibit M, 89 TTABVUE 174-90 (redacted), the admissibility of which is discussed *supra*.

[46] Exhibit "O," 96 TTABVUE 5-208 (previously submitted as Exhibit A to petitioner's notice of reliance).

[47] Exhibit P, 96 TTABVUE 209-19.

2. <u>Respondent's Evidence</u>

Respondent made the following evidence of record by notice of reliance:

- Certain of petitioner's responses to respondent's interrogatories and requests for admission;[48]

- Declaration of Jamie Belcastro, with exhibits;[49] and

- U.S. Food and Drug Administration regulations regarding labeling of over-the-counter drugs.[50]

Both parties also attempted to introduce samples of packaging for respondent's FLANAX products via notice of reliance. Although product packaging is not among the types of documents admissible by notice of reliance under Trademark Rule 2.122(e), because both parties treated such packaging as being of record, we deem the parties to have stipulated it into the record. We also note that examples of respondent's original and redesigned packaging are in evidence by other means, including as exhibits to the Belcastro Deposition and the Belcastro Declaration.

Parties

Respondent Belmora LLC was formed in 2002 by Virginia pharmacist Jamie Belcastro, its sole employee.[51] Its original product, and the one at issue in this case, is an analgesic tablet containing 220 mg. of naproxen sodium sold over the counter.

---

[48] Exhibit A, 112 TTABVUE 10-61.

[49] Respondent's Exhibit D, 111 TTABVUE 9-67 (redacted), the admissibility of which is discussed *supra*.

[50] Respondent's Exhibit F, 112 TTABVUE 152-58.

[51] Exhibit L, Belcastro Transcript at 18, 89 TTABVUE 89; Exhibit M, Belcastro Decl. ¶ 9, 89 TTABVUE 178.

Respondent began offering this product under the mark FLANAX in 2003 or 2004.[52]

Mr. Belcastro states in part that:

> Belmora's business model is to provide a user-friendly menu of OTC drug products for common ailments to U.S. residents of Hispanic background. When I refer to Hispanics, I mean persons in the U.S. whose personal or family backgrounds involve either a Spanish-speaking culture or a Spanish-speaking country.[53]

According to Mr. Belcastro, there are more than 48 million Hispanics in the United States, constituting the country's largest and most rapidly growing minority ethnic group.[54] Respondent's packaging is bilingual, in Spanish and English, and its original website ElMedicoFlanax.com was in Spanish.[55]

Petitioner Bayer Consumer Care AG owns a Mexican registration for the trademark FLANAX for pharmaceutical products, analgesics and anti-inflammatories.[56] The registration issued to a company named Syntex in 1978 and was renewed November 9, 2003.[57] Syntex was purchased by Hoffman-la Roche AG

---

[52] The evidence in the trial record does not permit us to make a finding as to the date of first sale. Respondent's FLANAX Registration, No. 2924440, identifies the date of first use as on or before March 1, 2004. Some evidence, designated confidential, indicates that marketing began in 2003, while there is other evidence that sales started in "mid-2004." *See also* Respondent's Brief, 126 TTABVUE at 5 (first use in commerce was on or before March 1, 2004), 9 (respondent commenced use of the mark on March 1, 2004); *but see id.* at 4, 24, 25 (indicating that marketing and sales began in mid-2004).

[53] Exhibit M, Belcastro Decl. ¶ 10, 89 TTABVUE 179.

[54] *Id.* at ¶ 12, 89 TTABVUE 180.

[55] *See* Exhibit L, Belcastro Transcript at 21-22, 89 TTABVUE 90-91; *id.*, deposition exhibit 5, 82 TTABVUE 262-66; 82 TTABVUE 206-34 (website printouts).

[56] Bürgin Transcript ¶ 9 and Trial Exhibit 23, 106 TTABVUE 7, 31; *see also* Exhibit O, 96 TTABVUE 5-208.

[57] Bürgin Transcript, Trial Exhibit 23, 106 TTABVUE 38-39.

in 1994, and petitioner took over OTC businesses from Roche in 2005.[58]   The FLANAX registration was assigned from Syntex to petitioner in September 2005.[59]

FLANAX brand analgesic has been sold in Mexico since 1976.[60]   Bayer de Mexico, S.A. de C.V., distributes FLANAX products in Mexico via a licensing agreement with petitioner.[61]   Sales and advertising figures are designated confidential, but petitioner presented evidence that FLANAX is the top-selling pain reliever in Mexico and the number one brand for Bayer de Mexico.[62]   Although the dosages differ from respondent's FLANAX analgesic, petitioner's Mexican FLANAX contains the same active ingredient: naproxen sodium.

Petitioner's FLANAX analgesic is not sold in the United States.  However, an affiliate of petitioner, Bayer Healthcare LLC, sells a naproxen sodium-based analgesic in the United States under the brand name ALEVE.[63]   The same employee of Bayer Healthcare, based in Morristown, New Jersey, was, until eight days before her deposition, global brand director for both the ALEVE product and the FLANAX product in Mexico.[64]

---

[58] *Id.*, ¶¶ 10-11, 106 TTABVUE 7.

[59] *Id.*, Trial Exhibit 23, 106 TTABVUE 41, 45.

[60] Bandera Transcript 8:8-9:3, 92 TTABVUE 12-13.  Respondent's objections to this answer as hearsay and lacking foundation are denied.

[61] Bürgin Transcript ¶¶ 13, 19, 106 TTABVUE 7-8.

[62] Bandera Transcript 12:19-15:9, 92 TTABVUE 16-19; *see also* Petitioner's Brief at 7.

[63] *See* Petitioner's Brief at 9, 125 TTABVUE 14; Fleisher Transcript 4:15-5:23, 91 TTABVUE 7-8; Exhibit F, 81 TTABVUE 152-65.

[64] Fleisher Transcript 7:25-8:24, 91 TTABVUE 11-12.

Analysis

Section 14 of the Trademark Act allows for cancellation of a registration on the Principal Register "by any person who believes that he is or will be damaged . . . by the registration." 15 U.S.C. § 1064. The party seeking cancellation must prove two elements: (1) that it has standing, and (2) that there are valid grounds for canceling the registration. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000).

A.    Petitioner's Standing

The Federal Circuit has enunciated a liberal threshold for determining standing. *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1760 (TTAB 2013). To establish standing, petitioner must prove that it has a "real interest" in this cancellation proceeding and a "reasonable basis" for its belief in damage. To prove a "real interest" in this case, petitioner must show that it has a "direct and personal stake" in the outcome herein and is more than a "mere intermeddler." *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1026-27 (Fed. Cir. 1999).

Respondent has contested petitioner's standing at every stage of this proceeding, including trial. In its brief, respondent makes several arguments why petitioner allegedly lacks standing to bring this proceeding, grounded in the fact that petitioner does not own a registration for the mark FLANAX in the United States, has not used that mark in this country, and does not plan to use the mark here. Respondent argues that "[g]oodwill exists only in connection with actual

18

commercial use, and Petitioner admits that it does not conduct business in or earn profits from sales in the U.S."[65]  Respondent contends that:

> In short, the parties' respective uses of the mark are two ships passing in the night: an international border completely walls off their respective spheres of economic activity, and neither party has any motive or intention to sell its product on both sides of that border.  Thus, the territorial principle of U.S. trademark law is dispositive of standing: "Trademark rights under the Lanham Act arise solely out of use of the mark in U.S. commerce." *Person's Co. v. Christman*, 900 F.2d 1565, 1570, [14 USPQ2d 1477] (Fed. Cir. 1990) (citations omitted).[66]

Petitioner, in turn, argues that Section 14 of the Trademark Act imposes no use requirement, distinguishing it (and other provisions of the Trademark Act) from Section 2(d).[67]

As we noted in both *Bayer Consumer Care AG*, 90 USPQ2d at 1592, and the Board's Order of February 2, 2010, respondent's focus solely on *petitioner's* commercial activities within the United States overlooks the fact that *respondent's own use* is in the United States.  Petitioner has established that it owns a registration for the mark FLANAX for pain relievers in Mexico and licenses its corporate affiliate to sell pain relievers containing the active ingredient naproxen sodium under that mark in Mexico.  The registration petitioner seeks to cancel is for the identical mark for identical goods, namely, "Orally ingestible tablets of Naproxen Sodium for use as an analgesic."  Thus, in terms of standing, petitioner has shown that it has an interest in protecting its Mexican FLANAX mark.  If

---

[65] Respondent's Brief at 15, 126 TTABVUE 23.

[66] *Id.*

[67] Petitioner's Reply Brief at 8, 132 TTABVUE 11.

respondent is using the FLANAX mark in the United States to misrepresent to U.S. consumers the source of respondent's products as petitioner's Mexican products, it is petitioner who loses the ability to control its reputation and thus suffers damage. As we will explore in the next section, the record in this case clearly establishes that the reputation of the Mexican FLANAX mark does not stop at the Mexican border.[68] *Cf. Steele v. Bulova Watch Co.*, 344 U.S. 280, 95 USPQ 391, 394 (1952) (stating that infringing goods bearing the BULOVA mark made in Mexico "could well reflect adversely on Bulova Watch Company's trade reputation in markets cultivated by advertising here as well as abroad").

Petitioner therefore is no mere intermeddler, but has a real interest in this proceeding and a reasonable basis for its belief that it is or will be damaged by the registration. Thus, it has satisfied the relatively low threshold to establish its standing. *See Cunningham*, 55 USPQ2d at 1844.

B.    Misrepresentation of Source

A party may, pursuant to Section 14(3) of the Trademark Act, petition to cancel a registration of a mark if the mark "is being used by, or with the permission of, the respondent so as to misrepresent the source of the goods or services on or in connection with which the mark is used." The term "misrepresentation of source," as used in Section 14(3), "refers to situations where it is deliberately misrepresented by or with the consent of the respondent that goods and/or services originate from a

---

[68] This case is thus distinguishable from *Person's Co.*, 14 USPQ2d 1477, on which respondent relies. In that case, the Japanese mark PERSON'S was neither used nor known in the United States: "The Person's Co. had no goodwill in the United States and the 'PERSON'S' mark had no reputation here." *Id.* at 1480.

manufacturer or other entity when in fact those goods and/or services originate from another party." *Osterreichischer Molkerei-und Kasereiverband Registriete GmbH v. Marks & Spencer Ltd.*, 203 USPQ 793, 794 (TTAB 1979); *see also Global Maschinen GmbH v. Global Banking Sys., Inc.*, 227 USPQ 862, 864 n.3 (TTAB 1985).

In order to prevail, petitioner must show that respondent took steps to deliberately pass off its goods as those of petitioner. That is, petitioner must establish "blatant misuse of the mark by respondent in a manner calculated to trade on the goodwill and reputation of petitioner." *Otto Int'l Inc. v. Otto Kern GmbH*, 83 USPQ2d 1861, 1863 (TTAB 2007). *See generally* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 20:60 (4th ed. 2014); Theodore H. Davis, Jr*., Cancellation under Section 14(3) for Registrant Misrepresentation of Source*, 85 TRADEMARK REP. 67 (Jan.-Feb. 1995). Thus, in reviewing the record, we look for evidence reflecting respondent's deliberate misrepresentation of the source of its product, "blatant misuse" of the mark, or conduct amounting to the deliberate passing-off of respondent's goods. Willful use of a confusingly similar mark is insufficient. *McDonnell Douglas Corp. v. Nat'l Data Corp.*, 228 USPQ 45, 47 (TTAB 1985).

Although the facts before us present a matter of first impression, they do not present a close case. The preponderance of the evidence before us readily establishes blatant misuse of the FLANAX mark in a manner calculated to trade in the United States on the reputation and goodwill of petitioner's mark created by its use in Mexico.

First, we find that respondent was aware that the FLANAX trademark was in use in Mexico in association with naproxen sodium-based analgesics when it adopted the FLANAX mark in the United States. Although most of the facts and arguments on which this finding is based are designated as confidential by respondent, the evidence establishes that Mr. Belcastro asked a graphic designer to create the following document just two months before his discovery deposition on August 18, 2009 – when respondent had been using the FLANAX mark for more than five years – and testified untruthfully about its genesis and role in his adoption of the mark:[69]



---

[69] Exhibit L, Belcastro Transcript Exhibit 4, 82 TTABVUE 261. Mr. Belcastro attempted to significantly alter some of the statements in his six-page errata sheet. Such material changes are impermissible in a testimony deposition before the Board. TBMP § 701.03(n). This, however, was a discovery deposition. Although some courts do not allow witnesses to change their transcripts under FED. R. CIV. P. 30(e) to directly contradict their examination testimony on material matters, others do, preferably with the original answers remaining in the record. *See* 8A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. CIV. § 2118 (3d ed. April 2013). Assuming without deciding that we would allow substantive changes to a discovery deposition transcript, we find Mr. Belcastro's explanations of these misstatements in the errata so lacking in credibility that they only serve to strengthen the conclusion that his discovery deposition testimony was untruthful.

In relevant part, Mr. Belcastro's email instructions to the graphic designer on June 17, 2009 were as follows:[70]

---

**Subject:**     Urgent Request

---

Hi Dan,

I am giving a presentation on Tuesday and I need a piece of artwork as follows. One pdf file that shows the current Flanax word as it appears in our packaging on the bottom of the file and show it evolving into the word Further Lasting Analgesia Naproxen on the top of the pdf file. Stick with our normal blues and whites and fonts. Don't put your identifiers on the file since I am using it in a presentation.

So it should be something like this:

Further Lasting Analgesia Naproxen

FLANAP

FLANOXEN

FLANXEN

FLANAX

Just show derivatives of the word Flanax from the slogan on the top so it covers a normal page in a pdf file and show different formats and fonts with each derivate.

Please contact me on my cell if you have questions.

Sincerely,
Jamie Belcastro
Belmora LLC

---

Based on this fabricated evidence and additional facts and argument designated as confidential, we find that respondent knowingly selected the identical mark FLANAX, used by petitioner's Mexican licensee on naproxen sodium-based painkillers, for use in the United States on the same type of goods.

Second, the evidence establishes that respondent's initial packaging copied petitioner's FLANAX logo as used in Mexico (demonstrated *supra* and *infra*, with white letters progressing from thick to thin) and other elements of petitioner's Mexican packaging. These include very similar (if not identical) shades of sky blue and blue-and-white striping along the bottom, approximately as follows, with

---

[70] Exhibit L, 82 TTABVUE 274.

23

petitioner's packaging on the left and respondent's on the right:




Respondent's packaging changed in 2008,[71] but continued to use the FLANAX mark in the same manner, as shown below:



Respondent thus adopted petitioner's identical source-identifying mark and logo, and a highly similar package design.

Third, perhaps the most important and telling fact that distinguishes this case from a Section 2(d) claim, the evidence shows that respondent's owner and agents repeatedly invoked the reputation of petitioner's FLANAX mark when marketing respondent's FLANAX product in the United States. Although nearly all

---

[71] Respondent's Exhibit D, Belcastro Decl. ¶ 7, 111 TTABVUE 53.

of this evidence was filed under seal, the following three examples filed publicly on the TTABVUE website are representative:

- A brochure in both English and Spanish, with a bullet point titled "***Increase Your Profits***" that states: "For generations, Flanax has been a brand that Latinos have turned to for various common ailments. Now you too can profit from this highly recognized top-selling brand among Latinos. Flanax is now made in the U.S. and continues to show record sales growth everywhere it is sold. Flanax acts as a powerful attraction for Latinos by providing them with products they know, trust and prefer."[72]

- A telemarketing script prepared by Mr. Belcastro stating in part: "I'm with **Belmora LLC**, we're the direct producers of **FLANAX** in the US. **FLANAX** is a very well known medical product in the Latino American market, for **FLANAX** is sold successfully in Mexico, Centre [sic] and South America.'"[73]

- A "sell sheet" often used to solicit orders from retailers, stating in part: "Flanax products have been used from [sic] many, many years in Mexico, Central and South America. Flanax products are now being produced in the United States by Belmora LLC."[74]

While respondent argues that these statements are true, we have no doubt that retail customers and consumers exposed to them would draw the logical conclusion that respondent's U.S. product is licensed or produced by the source of the same type of product sold under the FLANAX brand for decades south of the border. *Cf. West Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994) (stating, with respect to establishing prior use, that evidence should be considered as a whole, "as if each piece of evidence were part of a puzzle");

---

[72] Exhibit L, Exhibits 23 and 24 to Belcastro Transcript, 82 TTABVUE 269-70. Although the text of this exhibit appears to contain no references to respondent, other versions (filed under seal) do, including to "Belmora, LLC Proud Makers of Flanax."

[73] Exhibit M, Belcastro Declaration ¶ 30, 82 TTABVUE 285.

[74] *See id.*, Belcastro Declaration ¶ 33, 82 TTABVUE 286.

*All England Lawn Tennis Club (Wimbledon) Ltd. v. Creations Aromatiques, Inc.*, 220 USPQ 1069, 1072 (TTAB 1983) (sustaining Section 2(d) refusal for the following composite mark: concluding that "purchasers of applicant's cologne would incorrectly believe that said product was approved by or otherwise associated with the Wimbledon tennis championships").  Nor do we have any doubt based on the record that respondent deliberately and intentionally encouraged its customers to reach such a conclusion.  These documents thus operate as an admission by respondent that petitioner's mark FLANAX is known among the U.S. retailers and Hispanic consumers to whom respondent markets its products.  With their repeated references to the "brand" Flanax, these documents also undercut respondent's argument that FLANAX is generic for naproxen sodium in Mexico,[75] as too does petitioner's Mexican trademark registration.

Respondent's statements are consistent with the observations of Eduardo Gonzalez Machado, a contractor with the K. Fernandez & Associates advertising agency who researched opinions of distributors on respondent's behalf in 2007.  Mr. Gonzalez Machado testified that the distributors he interviewed were familiar with petitioner's FLANAX brand and aware of its popularity in Mexico.[76]  When

---

[75] See argument in Respondent's Brief at 26, 126 TTABVUE 34:  "Flanax" in this context is like "aspirin" (which started out as a trademark) or ibuprofen – it identifies for those who previously may have been exposed to it outside the U.S., a type of pain relief product as distinct from other types of analgesics.

[76] *See* Gonzalez Machado Transcript 33:5-17, 36:12-24 and Exhibits 9-11, 94 TTABVUE 36, 39, 116-20.

queried on cross-examination whether any distributors asked him "Who's Belmora?" Mr. Gonzalez Machado testified: "I don't remember getting a question. I think that the – what immediately made the connection was the word Flanax."[77] In fact, one of his questions for the distributors was: "When you visit a new store owner, are they familiar with the brand and with how popular the brand is in Mexico?"[78] As Mr. Gonzalez Machado testified:

> A. And I also remember saying to myself what a very interesting situation [respondent] has, because apparently this is [a] fantastic product and to get the – to be able to sell this in the United States for the Hispanic market.
> You have to remember right now we're 50,000,000 people in the United States Hispanics, and 60 percent – over 60 percent of those are from Mexico. Mexican descent. So the potential is huge for any product that relates to Mexico [ ] and that is known by Mexicans.[79]

Respondent argues that because it did not use the name "Bayer" on its packaging or in its marketing efforts, and because its own name "Belmora" was present on its packaging and used in its marketing, it could not have misrepresented the source of its products. We disagree. In denying respondent's motion for summary judgment, the Board found that there was a genuine issue of material fact as to whether respondent's self-identification on its packaging was sufficient to defeat petitioner's misrepresentation of source claim, explaining:

> Indeed, in applying other sections of the Act, even where there are clear disclaimers of nonaffiliation, courts often find that confusion or deception is nevertheless likely.

---

[77] Gonzalez Machado Transcript 73:7-14, 94 TTABVUE 76.

[78] Trial Exhibit 10 to Gonzalez Machado Transcript, 94 TTABVUE 118.

[79] Gonzalez Machado Transcript 17:9-20, 94 TTABVUE 20.

> *See, e.g., Audi AG v. D'Amato*, 469 F.3d 534, 81 USPQ2d 1108, 1116 (6th Cir. 2006); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 62 USPQ2d 1757, 1770 (3d Cir. 2002); *Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 4 USPQ2d 1778, 1784 (2d Cir. 1987); *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 225 USPQ 1122, 1131 (11th Cir. 1985). Here, of course, and by contrast, there is only a self identification in relatively small print, without any disclaimer of affiliation with petitioner, and respondent cites no authority for the proposition that self-identification alone is necessarily sufficient to defeat a misrepresentation of source claim in circumstances such as these.[80]

"The function of a trademark is to identify a single, albeit anonymous, source of commercial sponsorship of the goods to which it pertains." *Johnson & Johnson v. E. I. du Pont de Nemours & Co.*, 181 USPQ 790, 791 (TTAB 1974). Respondent therefore need not use the Bayer name to affirmatively misrepresent the source of its FLANAX-brand products. Respondent purposely achieved the same result by not only copying petitioner's mark and logo – and, for several years, significant aspects of its packaging – but also by repeatedly holding itself out as the source in the United States of the product sold for decades under the same mark in the bordering country of Mexico. We find that respondent's specific acts and conduct were "aimed at deceiving the public into thinking that [respondent's] goods actually emanate from petitioner." *Otto Int'l Inc.*, 83 USPQ2d at 1864.[81]

---

[80] Board Order of January 10, 2011, at 7 n.3, 60 TTABVUE 7.

[81] We further note that courts have found that, in certain circumstances, use of a defendant's own name or mark can lead consumers to believe that the defendant is either the successor to or the licensee of the senior mark owner. *See Jacobs v. Beecham*, 221 U.S. 263, 272 (1911) (Holmes, J.) ("The statement that the defendant makes [the pills defendant sells using plaintiff's name] does not save the fraud. That is not what the public would notice or is intended to notice, and, if it did, its natural interpretation would be that the

We have carefully considered all of respondent's arguments and specifically address two others. First, respondent contends that petitioner's claim of misrepresentation was "stale" because respondent changed its packaging shortly before petitioner amended its petition for cancellation to add a misrepresentation of source claim, and also because its marketing is now handled by a third-party distributor. Respondent cites no case law in support of its staleness argument. BLACK'S LAW DICTIONARY (9th ed. 2009) defines a "stale claim" as: "A claim that is barred by the statute of limitations or the defense of laches." The facts of this case do not fall under that definition; neither is at issue here. In addition, we agree with petitioner that because its misrepresentation claim arises from the same conduct as its earlier claim under Section 2(d), respondent had adequate notice of petitioner's objection to its conduct, and the misrepresentation claim relates back to the date of the original pleading, citing *Korody-Colyer Corp. v. Gen. Motors Corp.*, 828 F.2d 1572, 4 USPQ2d 1203, 1205 (Fed. Cir. 1987). In any event, we do not view respondent's continued use of the copied packaging as essential to petitioner's misrepresentation claim. For at least four years, respondent marketed its product in a similar package while deliberately misrepresenting its analgesic as the U.S.

---

defendant had bought the original bus[i]ness out and was carrying it on. It would be unfair, even if we could assume, as we cannot, that the defendant uses the plaintiff's formula for his pills."); *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 176 USPQ 15, 17 (2d Cir. 1972) (Friendly, J.) (noting that use of trade name or house mark on box "does not save the day; a purchaser could well think plaintiff had licensed defendant as a second user and the addition is thus 'an aggravation, and not a justification'" (quoting *Menendez v. Holt*, 128 U.S. 514, 521 (1888))). We think customers could draw the same conclusions here, and note in particular that respondent's marketing material clearly contemplates, and seeks to capitalize on, its targeted consumers' familiarity with and recognition of petitioner's well-known brand in Mexico.

version of petitioner's foreign FLANAX product. Respondent built its business on this heritage of misrepresentation, and petitioner suffers damage today due to respondent's continued use of the identical FLANAX mark on the same type of product, even though its packaging and marketing may have changed.

Finally, respondent argues that its marketing efforts to link its FLANAX product to petitioner's FLANAX product continued only for a limited number of years: "To be sure, in the beginning limited efforts were made to market to native Spanish speaking U.S. consumers who might have been exposed to 'Flanax' in Mexico."[82] Yet the evidence does not support a finding that respondent's misleading marketing was limited or short-lived. The trial record includes numerous instances of respondent's founder, Mr. Belcastro, as well as his agents, deliberately invoking the reputation of petitioner's foreign product to sell his own goods domestically under the same mark during the 2006-2009 time frame. The record contains insufficient evidence from which we could conclude that respondent did not make such misrepresentations in its marketing before or after these years.[83] Even if respondent did not, its continued use of the FLANAX mark, coupled with its earlier deceptive marketing over several years as it built its business, constitutes

---

[82] Respondent's Brief at 26, 126 TTABVUE 34.

[83] In 2007, after this proceeding was filed, Mr. Belcastro donated the computer used in his business to charity, and therefore petitioner was prevented from obtaining any requested documents that resided only on that computer. *See* Board Order of February 16, 2010 at 4 n.3, 45 TTABVUE 5 (noting that respondent does not dispute that, "after petitioner initiated this proceeding, Mr. Belcastro donated an old computer containing relevant information to charity and deleted certain apparently relevant e-mails").

misrepresentation of the source of respondent's goods within the meaning of Section 14(3).

Conclusion

Pursuant to Section 14(3) of the Trademark Act, we find that respondent is using the mark FLANAX so as to misrepresent the source of the goods on which the mark is used.

*Decision*:  The petition to cancel is granted.  Registration No. 2924440 will be cancelled in due course.